NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0538n.06
Filed: August 29, 2008

`

## No. 07-4241

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DEBORAH A. NOVOTNY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| REED ELSEVIER (LEXIS NEXIS) et al., | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: ROGERS and McKEAGUE, Circuit Judges; ADAMS, District Judge.**[*]

**ADAMS, District Judge.** Plaintiff-Appellant Deborah A. Novotny appeals from the district

court's grant of summary judgment in favor of Defendants Reed Elsevier and Eric Roberts on her

claims of gender discrimination, retaliatory discharge, and defamation. Novotny claims that genuine

issues of material fact remain on each of her asserted causes of action. Because none of Novotny's

arguments has merit, we affirm.

## I.

Novotny began her employment with Reed Elsevier on August 25, 2003. At the beginning

of her employment, she was supervised by David Glowacki. Glowacki remained Novotny's

supervisor for roughly the first year of her employment. In June of 2004, Roberts became Novotny's

direct supervisor. Within a short time after becoming Novotny's supervisor, Roberts noted several

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

areas in which he believed Novotny's performance was deficient. Roberts asserted that Novotny did not promptly respond to questions about when activities would be completed and alleged that he had received feedback that Novotny was unprofessional when dealing with her direct reports.

In November of 2004, Novotny proposed to Amy Bloebaum that she stop reporting directly to Roberts and instead report directly to Bloebaum. From the record, it appears that this request was never seen by Roberts. On December 10, 2004, based on his observations and the information in his possession, Roberts placed Novotny on a "Corrective Action Plan" ("CAP"). The CAP indicated that her direct reports believed that Novotny had failed to "facilitate a positive and cooperative team environment with others." During the meeting in which Roberts placed Novotny on the CAP, he also discussed his concerns about her personal calendar. Roberts informed Novotny that he did not believe that it was proper that she consistently blocked out time on Friday afternoons and Monday mornings and labeled it as unavailable.

On December 15, 2004, Novotny sent a memorandum to her human resources department. In that memorandum, Novotny denied the deficiencies stated in the CAP. Further, Novotny alleged for the first time that Roberts was discriminating against her on the basis of gender. Novotny's complaint was immediately investigated internally. Novotny, Roberts, and several other Reed Elsevier employees were interviewed. Based on the investigation, it was concluded that no gender discrimination had occurred.

On January 7, 2005, Bonnie Vaughn, one of Novotny's subordinates, contacted the human resources department. Vaughn reported that Novotny had asked her to submit expense reports for photographs taken by Novotny so that Roberts would not be involved in approving the expenses.

The human resources department then investigated Vaughn's complaint by speaking with Novotny's other subordinates. Multiple employees indicated that Novotny had requested that they submit expenses for her to approve rather than submitting them herself to Roberts. Based upon this investigation, Bloebaum scheduled a meeting with Novotny on January 14, 2005. During this meeting, Novotny admitted to asking her subordinates to submit expenses for her review, despite having incurred the expenses herself. "Ms. Novotny said during the meeting that she had done this in order to avoid submitting these expenses to her direct supervisor, Eric Roberts. She admitted that in doing this she had violated Company policy." J.A. at 226. Bloebaum then informed Novotny that she was being terminated for violating the expense policy.

On December 15, 2005, Novotny filed suit against Reed Elsevier and Roberts. Novotny's complaint alleged gender discrimination, sexual harassment, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress, a violation of the Equal Pay Act, defamation, and wrongful discharge in violation of public policy. Novotny voluntarily dismissed both her claims for emotional distress. Following discovery, the district court granted summary judgment on each of Novotny's remaining claims in favor of both defendants. This appeal followed, challenging the grant of summary judgment on only the claims of gender discrimination, retaliation, and defamation.

## II.

A district court's grant of summary judgment is reviewed de novo. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c)). In evaluating the evidence presented, a court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## A.     Gender Discrimination

To make out a prima facie case of gender discrimination Novotny was required to show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). A district court "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003). If the plaintiff meets this initial burden of establishing a prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If in turn the defendant provides a legitimate reason, the burden reverts to the plaintiff to show that the defendant's alleged reason is

- 4 -

a mere pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

At all times, however, the burden of persuasion remains with the plaintiff. *Id.*

With regard to her termination, it is undisputed that Novotny met the first three elements of

her prima facie case of gender discrimination. On appeal, Novotny claims that there remains a

genuine issue of material fact as it relates to the final element of her prima facie case. Novotny's

arguments lack merit.

Novotny first contends that she was replaced by a person, Brad Clark, outside the protected

class. The record, however, refutes this contention. Clark did not take Novotny's position. Rather,

he took on her job responsibilities in addition to his own. Such an act does not constitute

replacement.

> [A] person is not replaced when another employee is assigned to perform the
> plaintiff's duties in addition to other duties, or when the work is redistributed among
> other existing employees already performing related work. A person is replaced only
> when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636

F.2d 1116, 1117 (6th Cir. 1980)); *see also Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)

("Spreading the former duties of a terminated employee among the remaining employees does not

constitute replacement."). Novotny's reliance on this argument, therefore, is misplaced.

Novotny also argues that she was treated differently than similarly situated males. Novotny's

argument in support of this statement is difficult to follow. Novotny appears to argue two distinct

claims: 1) a pre-termination claim of discrimination, and 2) a claim of discrimination related to her

termination. The Court reviews each of these claims.

Novotny first asserts that she was discriminated against prior to her termination. Novotny claims that her calendar was closely scrutinized, she was left off of out-of-office emails, she was referred to executive coaching, she was pushed for inputs on her development plan, and she was placed on a CAP. Novotny asserts that her supervisor, Roberts, did not take any of these actions against her male counterparts. As these alleged actions do not qualify as adverse employment actions, Novotny failed to state a claim for pre-termination activities.

In *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir. 1999), this Court explained a materially adverse employment action as follows:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id*. at 662 (citation omitted). We have consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *See, e.g., Jacklyn v. Schering Plough Healthcare Prod*., 176 F.3d 921, 930 (6th Cir. 1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"); *Agnew v. BASF Corp.*, 286 F.3d 307, 310-11 (6th Cir. 2002) (finding that being placed on performance improvement plan does not constitute an adverse employment action). Similar to the above

holdings, requiring Novotny to remove blocks from her private calendar, submit self-evaluations earlier than required by human resources, and placing her on a plan to improve her work performance do not qualify as materially adverse employment decisions. Accordingly, with respect to her pre-termination claim of gender discrimination, Novotny failed to satisfy her prima facie burden.

Finally, Novotny contends that she was treated differently than her similarly situated male co-workers when she was terminated for expense report irregularities. Novotny's argument lacks merit.

"[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y. 1986); *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988)). In an effort to meet this test, Novotny alleges that male co-workers that reported to Roberts committed similar violations of the expense reporting policy. Novotny's argument, however, suffers from two flaws.

First, Novotny ignores that her violations were the only violations reported to management during her employment. Specifically, employees that Novotny directly supervised reported that they felt uncomfortable reporting expenses in the manner suggested by Novotny. There is no evidence that any complaint was made about the reporting practices of Novotny's alleged comparables.

Second, Novotny ignores the fact that she willfully violated the reporting policy in order to evade review by her direct supervisor, Roberts. Novotny provided no evidence that any male co-worker willfully violated the expense policy. Rather, she provided vague references to occasions where the policy may have been violated by happenstance or oversight. Given her own admissions that her misconduct was willful, Novotny's assertions of comparable actions by male co-workers fall short of demonstrating that males engaged in similar conduct. Consequently, Novotny failed to demonstrate a prima facie case of gender discrimination.

Assuming, *arguendo,* that Novotny met her prima facie case as it relates to her termination, judgment in favor of Defendants was still proper. It is undisputed that Defendants provided a legitimate business reason for Novotny's termination. For that matter, Novotny has admitted that she violated the company's expense policy. Novotny, therefore, bore the burden of proving that the proffered reason for her termination was pretextual. To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell v. Vanderbilt Univ*., 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "In order to prove pretext, therefore, the plaintiff must introduce admissible evidence to show that the proffered reason was not the true reason for the employment decision and that discriminatory animus was the true motivation driving the employer's determination." *Grace v. USCAR*, 521 F.3d 655, 677-78 (6th Cir. 2008) (citations, quotations, and emphasis omitted).

Novotny appears to argue that she demonstrated pretext by presenting evidence that her employer's investigation of her conduct was inadequate. Novotny claims that Defendants did not follow their internal protocols for such an investigation. Novotny, however, ignores key facts. First, the investigation was initiated by a complaining employee. Thereafter, numerous employees reported that Novotny had violated the expense policy. Furthermore, as noted above, Novotny admitted to violating the policy. It is difficult to conceive of how such an investigation could be labeled inadequate. Novotny's pretext argument lacks merit. The trial court, therefore, did not err in granting summary judgment on her claim of gender discrimination.

## B.     Retaliation

A plaintiff alleging retaliatory discharge must prove the following: (1) that she was engaged in a protected activity; (2) that she was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984). Retaliatory discharge claims follow the *McDonnell Douglas* burden-shifting framework, in which the plaintiff must first make out a prima facie case of discrimination. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). The burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff. *Id.* If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. *Id*.

To demonstrate a causal connection between the materially adverse employment action and the exercise of protected rights, "a plaintiff must proffer evidence sufficient to raise the inference that

[the] protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d

324, 333 (6th Cir. 2007) (quotation omitted).

> Generally, mere temporal proximity between an assertion of Title VII rights and a materially adverse action without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of a retaliation claim. However, we have recently clarified that, in a small subset of cases, temporal proximity alone may be sufficient to establish causality:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

> … Beyond temporal proximity, other indicia of retaliatory conduct would include evidence that the plaintiff was treated differently, either less positively or more negatively, than similarly situated employees who had not exercised Title VII rights, or evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights.

*Evans v. Prospect Airport Servs., Inc.*, 2008 WL 2604312, at *6, (6th Cir. June 27, 2008) (citations

and quotations omitted).

Approximately three weeks after Novotny's complaint of gender discrimination, Defendants

began their investigation of her expense reporting. Assuming, *arguendo*, that Novotny's claim falls

within the subset of cases in which temporal proximity may establish a prima facie case, her claim

still must fail. As stated above, Defendants provided a legitimate business reason for Novotny's

termination. Likewise, Novotny has again argued that the "inadequate" nature of the investigation

demonstrates pretext. As detailed above, this argument lacks merit. The district court, therefore,

properly granted summary judgment on Novotny's claim of retaliation.

- 10 -

**C.     Defamation**

To state a claim under Ohio law for defamation, Novotny must show that there was: 1) a false statement, 2) defamatory to her, 3) published to a third party, 4) by a defendant who was at least negligent, and 5) damaging to her reputation. *See Lansdowne v. Beacon Journal Publishing Co.*, 512 N.E.2d 979, 984 (Ohio 1987).  Accordingly, in defending a defamation action, it is sufficient for the defendant to show that "the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation." *Nat'l Medic Srvs. Corp. v. E.W. Scripps Co.*, 573 N.E.2d 1148, 1150 (Ohio Ct. App. 1989).

In the instant matter, Novotny contends that she was defamed when an employee of Reed Elsevier informed someone that she was "sacked for fiddling with expenses."  As detailed above, this statement is factually accurate.  Novotny was terminated for attempting to have subordinates submit expense reports so that her supervisor would not review them.  Given Novotny's admission that she acted in this manner, it is difficult to conceive of how the above statement could be labeled false.  Rather, it falls squarely into the category of being substantially true.  Consequently, her claim for defamation must fail as a matter of law.

**D. Conclusion**

Like her eight-count district court complaint, Novotny's appeal casts a wide net.  She sets forth an array of legal arguments with little to no factual basis to support those arguments.  We, therefore, determine that the trial court committed no error in awarding Defendants summary judgment on each claim challenged on appeal.

**III.**

For the foregoing reasons, we affirm.