**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0102n.06

**No. 13-3552**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NANAKO CARROLL, | ) | **FILED**<br>Feb 05, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| STATE OF OHIO DEPARTMENT | ) | |
| OF ADMINISTRATIVE SERVICES, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BOGGS and ROGERS, Circuit Judges, and STEEH, District Judge.[*]

BOGGS, Circuit Judge. Nanako Carroll sued the Ohio Department of Administrative Services ("ODAS") in federal court for, *inter alia* and as relevant to this appeal, gender discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Carroll alleged that, following an incident with a co-worker, she was suspended and later reassigned for discriminatory reasons. She further alleged that such action was taken against her in retaliation for her past complaints of discrimination. The district court granted ODAS's motion for summary judgment on both claims, and Carroll appealed. We affirm the judgment of the district court.

---

[*] The Honorable George C. Steeh, United States District Court for the Eastern District of Michigan, sitting by designation.

# I

Carroll has worked at ODAS since January 1998. From 2000 to 2008, she worked at ODAS as an Information Technology ("IT") Manager. Carroll alleged that the IT group in which she worked was dominated by men and that she was discriminated against on the basis of her gender at various points throughout her career. As relevant to this lawsuit, Carroll bases her claims of discrimination and retaliation on two alleged adverse employment actions following an incident with one of her subordinates.

In late 2007, Carroll participated in the hiring of two men—Ben Hooker and Greg Smith—who were initially hired for a six-month probationary period and reported directly to Carroll. Shortly after Carroll informed Hooker and Smith that their performance was below expectations, Hooker lodged a complaint at ODAS, by way of his union representative, claiming that Carroll had threatened him several weeks earlier, saying, "if you fuck me, I'll hunt you down and kill you," and that, on another occasion, Carroll had "thumped" him on the forehead for downloading an unauthorized screensaver.

The first adverse employment action that Carroll complains of is her suspension for 23 hours without pay as a result of Hooker's allegations. Gary Allbright, the ODAS Equal Employment Opportunity Manager, launched an investigation into the accusations and recommended that Carroll be disciplined. In reaching his conclusion, Allbright conferred with Allison Shaeffer, who was then the Human Resources Director at ODAS, and Ray Geis, who was the Labor Relations Officer. On February 29, 2008, Carroll was placed on a three-week administrative leave pending the outcome of the disciplinary process. That same day, she emailed Shaeffer saying that she felt that she was being discriminated against.

Carroll attended a disciplinary hearing before Hearing Officer Darren Shulman on March 31 and April 2, 2008. Shulman found probable cause to believe that Carroll had made the alleged threat and had therefore exhibited a "failure of good behavior," in violation of ODAS "Work Rules." Shulman also found that the "thump" on the forehead constituted a minor violation of the Workplace Violence Prevention Policy. Based on these incidents, Shulman found just cause for discipline and determined that Carroll should be suspended for three days without pay. Hugh Quill, the ODAS Director at the time, ultimately approved Carroll's suspension. When Carroll indicated that she wanted to appeal the decision, her suspension period was reduced to 23 hours, which meant that it was no longer eligible for appeal under the procedural rules in place at ODAS because the suspension was less than three days in length.

Carroll then requested an investigation into whether Hooker and Smith had lied on their job applications. ODAS declined to contact the employees' former supervisors or otherwise pursue such an investigation. Carroll was not allowed to participate in their performance reviews, and each of them was appointed to a full-time position.

The second adverse employment action that Carroll complains of is her reassignment, on July 31, 2008, from the position of IT Manager to the newly created position of Information Technology Infrastructure Library ("ITIL") Manager, which Carroll alleges was a demotion. Around that time, Hooker and Smith were also reassigned from Carroll's group to the "email group." ODAS claims that Carroll's reassignment was a lateral transfer—not a demotion—and notes that Carroll's job salary and classification remained the same. Carroll, in contrast, alleges that the reassignment was a demotion. As IT Manager, Carroll supervised five employees, oversaw a million-dollar budget, and was called upon to use her technical expertise regularly as part of her job. As ITIL Manager, Carroll alleges that she supervised no one, had minimal

3

budgetary oversight, and had fewer responsibilities, which included significant non-technical secretarial and administrative duties.

To support her discrimination claim, Carroll alleges that she was suspended and demoted even though Brant Thomas, a male employee, received a lesser punishment for more egregious conduct. Carroll alleges that Thomas "engaged in a two-year campaign of violence and intimidation against Ms. Wozniak," a female employee, for which Thomas "was not disciplined." Pl.'s Br. at 34, 49. According to Carroll, Thomas threw things at Wozniak, berated her in front of her colleagues, cursed at her, slammed metal cabinets when he passed by to scare her, and ordered her to come into work on her day off "under false pretenses." *Id.* at 45-47. Carroll acknowledges that, pursuant to a then-anonymous email complaint, ODAS investigated Thomas, determined that he had engaged in sexually explicit conversations and other inappropriate activity on his computer, and suspended Thomas for 20 days. ODAS also found that Thomas had engaged in "horseplay" at the office, but found no "malicious intent" behind it. Carroll argues that the conduct for which Thomas was investigated and disciplined was "not the conduct Ms. Wozniak had been complaining to management and HR about," for which Carroll claims Thomas was neither investigated nor disciplined at any point. Pl.'s Br. at 43-44.

To support her retaliation claim, Carroll alleges that she was suspended and demoted in retaliation for the various complaints of discrimination that she had lodged throughout her years at ODAS and for her recent complaint of discrimination in connection with the disciplinary investigation. *Id*. at 60.

## II

We review the district court's grant of summary judgment de novo. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). When ruling on a summary-judgment motion, a court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A

"Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting 42 U.S.C. § 2000e–2(a)(1)). "Where, as here, a case is at the summary judgment stage and a plaintiff seeks to prove discrimination via indirect, rather than direct, evidence, the plaintiff must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination." *Id.* (citing the *McDonnell Douglas* burden-shifting framework for evaluating discrimination claims, as articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973)).

To establish a prima facie case of gender discrimination, a plaintiff must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent*, 514 F.3d at 494 (citing *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004)).

5

To establish pretext, a plaintiff must show that that the defendant's articulated legitimate, nondiscriminatory reason: (1) lacks a basis in fact, (2) did not actually motivate the defendant's actions, or (3) was insufficient to motivate the defendant's actions. *Id.* at 497. "This court has adopted an 'honest belief' rule with regard to an employer's proffered reason for discharging an employee." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citations omitted). Under that rule, "[a]n employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.* (citations and internal quotation marks omitted).

Here, ODAS argues that Carroll failed to establish the fourth element of her prima facie case with respect to both her suspension and reassignment, failed to establish the second element of her prima facie case with respect to her reassignment, and failed to rebut ODAS's legitimate, non-discriminatory reasons for its actions. We agree with the district court that Carroll failed to offer evidence rebutting ODAS's legitimate, non-discriminatory reasons for reassigning her. Carroll also failed to offer evidence rebutting ODAS's legitimate, non-discriminatory reasons for suspending her. Because Carroll did not discharge her ultimate burden at the summary-judgment stage, we need not consider whether she advanced a prima facie case of discrimination in the first instance.

With regard to Carroll's suspension, Carroll argues that she should not have been disciplined at all because Hooker invented his allegations against her in order to save his job. But Carroll admits to having thumped Hooker on the forehead, and all of the individuals involved in investigating and disciplining Carroll believed the evidence that she had made the threatening statement to Hooker. Allbright, who led the investigation, testified that, although

ODAS had considered Hooker's motivation to concoct an allegation to save his job, "we still felt that [the] statement had been made and the recommendation should be followed." The testimony of Shaeffer, who was also involved in the investigation, mirrored that of Allbright. And Shulman, in his report, expressly weighed the credibility of the different parties involved before reaching a decision. Carroll quotes Allbright as having testified: "[The discipline] was legitimately called for, yes. I agreed with the recommendation, *I guess*." Pl.'s Br. at 33 (emphasis and alteration in plaintiff's brief). Carroll takes Allbright's "I guess" to mean that Allbright "expressed doubt about the decision to discipline Ms. Carroll." *Id.* That is an unreasonable interpretation of Allbright's statement, which merely reinforces rather than contradicts his testimony that he felt that the statement had been made and that discipline was warranted. Carroll insists that she never threatened Hooker, but even if true, that is beside the point. Carroll can point to no evidence showing that the decisionmakers involved in investigating and disciplining her did not honestly believe that she had made the threatening statement to Hooker, along with the forehead "thump," and that a brief suspension was therefore appropriate. Accordingly, Carroll failed to rebut ODAS's proffered reasons for its decision to suspend her, and offered no evidence indicating that discrimination was the real reason for her suspension.

Carroll also failed to show that ODAS's proffered reasons for reassigning her to the ITIL Manager position were pretextual. ODAS argues that Carroll's reassignment was part of a package intended to address several organizational needs. Specifically, the decision-maker responsible for Carroll's reassignment, Andrew Scher, who was the Chief Operating Officer of the IT group, testified:

> There were three things that I was trying to accomplish or three things that existed at that time that I looked to address. One, there was clear conflict within the

UNIX organization [Carroll's group] that needed to be addressed; two, I had a need for two e-mail engineers [and] . . . didn't have confidence that we could get the headcount from the State; and, three, as I said, I was looking to fill an ITIL program manager.

Shaeffer's testimony is largely consistent with Scher's, though Shaeffer added another non-discriminatory reason for the transfer, which concerned Carroll's handling of customer service. Shaeffer testified:

We continued to have ongoing relationship issues between Nani [Carroll] and the two employees, Mr. Hooker and Mr. Smith. At – We had tried several attempts to bring some resolution and tried to bring that workplace back to a productive environment, and we were not successful in doing that. In addition to that, the Office of Information Technology was really focusing on a customer centric environment, and they did a customer service survey or a readiness survey, if you will, and got a lot of feedback from different customers from other State agencies and so forth, and we had a lot of negative feedback on Miss Carroll from our customers, so there was that, that many, many – many people, customers, if you will, had indicated that they did not see OIT being able to totally satisfy customer expectations with Miss Carroll. With that and the work environment situation – In addition to that, we had a new technology coming up that OIT was getting ready to embark on called ITIL, Information – Infrastructure Technology Information I think is what it's called, and it was something that the division was going to be moving forward with, and they needed someone to manage that, so with all those considerations, Nani was chosen to do that.

Carroll alleges that ODAS's proffered reasons for reassigning her were pretextual. Specifically, she claims that reassigning her to the position of ITIL Manager was not a reasonable way to resolve the conflict in her group, that the need for resources in the email group was irrelevant to the decision to transfer her to ITIL, and that the need to fill the ITIL position cannot explain her transfer into that position, where ODAS did not have confidence in her ability to fill the role. Pl.'s Br. at 65-73. Carroll also alleges that Scher's failure to cite Shaeffer's additional reason, concerning customer complaints, is evidence of pretext. *Id.* at 71-72.

Carroll's argument lacks merit. As to her first point, whether ODAS made the right decision in reassigning her has no bearing on whether its explanation for its decision was

8

truthful.  Carroll concedes that there was conflict within her group, and though she disagrees with the decision, she does not dispute that one of the reasons that she was reassigned was to resolve the conflict.  *Id.* at 73, 75.  "We do not require that the decisional process used by the employer be optimal or that it [have] left no stone unturned."  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 599 (6th Cir. 2007) (citations and internal alteration and quotation marks omitted).  "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason," the employer's proffered reason cannot be considered a pretext for discrimination.  *Id.* at 598.  Carroll points to no evidence that would suggest that ODAS did not honestly believe the reasons it gave for reassigning her.

As to Carroll's second point, when asked why Carroll needed to be moved if the other two employees in conflict with her were also moved, Shaeffer reasonably explained that ODAS management had made a decision to separate the parties without implicitly assigning blame to either side: "if you can't get along, we're going to separate the parties."  Carroll does not dispute that there was a need for resources in the email team, as Scher claimed.

And as to Carroll's third point, the record supports ODAS's contention that it believed that she was capable of filling the role despite seeing areas in which she needed to improve.  Carroll argues: "Given Mr. Scher's poor assessment of Ms. Carroll, combined with the alleged importance of ITIL, his assertion that he handpicked her because of her 'strong leadership' and 'technical proficiency' lacks any credibility."  Pl.'s Br. at 70.  Carroll purports to catch Scher contradicting himself, as if his view of Carroll had to be either uniformly positive or uniformly negative.  But that is not a realistic picture of the workplace or the situation here.  Scher reasonably explained:

9

Q. What about Nani's expertise was important in this?

A. She had deep technical understanding; she had a – an ability to get things done in an organization where it's hard to get things done; and she has had substantial experience in the organization, so knew all the right people to be talking to when investigating and implementing processes.

Q. So you respected her work performance.

A. I respected her experience, absolutely.

*       *       *

Q. Well, what's the difference? Explain the difference to you between expertise and work performance.

A. There had been conflicts within her team that impacted her performance and there had – there did not – was not affected by her expertise. I thought this opportunity was a very good opportunity to leverage her expertise and her knowledge of the organization and reduce the conflict in the organization, including with her.

In other words, Scher valued Carroll's experience and technical expertise despite believing that she needed improvement in avoiding or resolving conflict within her team. Carroll also argues that, given her problematic history with customer service, "it is inconceivable that DAS would choose her to implement ITIL, a system intended to address complaints regarding customer service." Pl.'s Br. at 71. But as her new supervisor in ITIL explained, "Nani is very process oriented, and that's really what [ITIL] was about . . . process improvement." Revamping the system for handling customer service is very different from personally handling individual customer complaints, and the decisionmakers at ODAS could easily have believed that Carroll would be adept at one task but not the other.

Finally, the existence of an additional legitimate, non-discriminatory reason for transferring Carroll does not undermine ODAS's other supported explanations; in fact, it buttresses the organization's overall contention that the decision to reassign Carroll was not motivated by discrimination. It is true that "shifting justifications over time calls the credibility of those justifications into question." *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012) (citations omitted). "But both this Circuit and others have

10

recognized that providing *additional* non-discriminatory reasons that do not conflict" with ones previously stated "does not constitute shifting justifications." *Id.* (collecting cases).

Carroll can point to no evidence suggesting that ODAS's explanation was not honestly held or that the views of any of the parties involved in her reassignment were not honestly given. In other words, Carroll cannot show that ODAS's explanation lacked a basis in fact, did not actually motivate the Defendant's actions, or was insufficient to do so. *See Vincent*, 514 F.3d at 497. Accordingly, even were Carroll able to prove her prima facie case of discrimination, her claim fails because she cannot show a genuine issue of material fact as to pretext.

**B**

In addition to prohibiting discrimination, Title VII prohibits an employer from retaliating against an employee who asserts a discrimination claim. *See* 42 U.S.C.A. § 2000e-3. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). Like discrimination claims, claims of retaliation are evaluated under the *McDonnell Douglas* burden-shifting framework. *Novotny v. Elsevier*, 291 F. App'x 698, 705 (6th Cir. 2008). If the plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions." *Id.* "If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual." *Id.*

11

ODAS argues that Carroll failed to establish a prima facie case of retaliation, with respect to both her suspension and her reassignment, because she did not establish a causal connection between her complaints and her employer's decisions. ODAS also argues that Carroll failed to rebut its legitimate, non-discriminatory, non-retaliatory reasons for its actions.

As with a discrimination claim, a plaintiff claiming retaliation must show that her employer's proffered reasons for its actions were a pretext for discrimination. As explained earlier in connection with Carroll's discrimination claim, the decisionmakers at ODAS offered legitimate, non-discriminatory reasons for suspending and reassigning Carroll, and Carroll failed to rebut their explanation. Thus, Carroll did not establish a genuine issue of material fact with respect to her retaliation claim. The question whether Carroll established a prima facie case of retaliation in the first instance is therefore not relevant to our decision.

### III

We AFFIRM the judgment of the district court.