RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0493p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMA M. VINCENT,

*Plaintiff-Appellant,*

No. 06-4138

*v.*

BREWER COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00511—Thomas M. Rose, District Judge.

Argued: September 10, 2007

Decided and Filed: December 19, 2007

Before: GUY, ROGERS, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Stephen E. Imm, KATZ, GREENBERGER & NORTON, Cincinnati, Ohio, for Appellant. Edward S. Dorsey, SANTEN & HUGHES, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Stephen E. Imm, KATZ, GREENBERGER & NORTON, Cincinnati, Ohio, for Appellant. Edward S. Dorsey, SANTEN & HUGHES, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Plaintiff Jama M. Vincent brought suit under Title VII of the Civil Rights Act of 1964, alleging that her employer discharged her on account of her gender. The district court held that Vincent could not establish a prima facie case of gender discrimination because she could not show that she was as qualified for her position as her male replacement. Consequently, the district court granted summary judgment in favor of her former employer, the Brewer Company. To establish a prima facie case of gender discrimination, however, a plaintiff who can prove that she was replaced by a member of the opposite sex need not show that she possesses qualifications similar to those of her replacement. Because Vincent has established that she was replaced by a man and has created genuine issues of material fact with respect to the other elements of a prima facie case, we reverse.

1

**I.**

Vincent, a woman, was employed by Brewer in its Utility Division at various points between April 2002 and July 2003. During this period, Vincent was laid off and rehired two to three times before being permanently laid off on July 25, 2003.

Brewer's Utility Division lays natural gas pipes and performs related services for the Cinergy utility company.[1] There are four tiers of employees within the Utility Division: laborers, crew leaders, foremen, and division supervisors. Crew leaders supervise the work of laborers, and, in this capacity, are responsible for hooking up live gas lines. Consequently, all crew leaders working with live gas must be certified. Cinergy issues such live gas certification to Brewer employees after their successful completion of a Cinergy-offered course. Two of the crew leaders, Jay Fetters and Kevin Parker, have greater responsibility and also serve as foremen. Fetters and Kevin Parker report directly to Ken Parker, a supervisor. A few months prior to Vincent's final layoff, Brewer hired Salvadore "Sal" Dilillo to serve as a supervisor alongside Ken Parker.

In October 2002, Ken Parker authorized Vincent to take the Cinergy certification course and promoted her to the position of temporary[2] crew leader upon her completion of the course. With Vincent's promotion came a pay raise and increased responsibility. Though no other women were crew leaders at the time of Vincent's promotion and Vincent was the only woman that Ken Parker had ever selected to obtain live gas certification, other women have been crew leaders at Brewer.

Over the course of her employment with Brewer, Vincent was reprimanded for misconduct on several occasions. First, in October 2002, Vincent left a company truck containing equipment on a roadside after the vehicle ran out of gas due to her failure to fuel it earlier in the day. According to Ken Parker, Vincent left the keys to the truck in its ignition and did not lock its doors. Vincent alleges that she attempted to call her superiors to apprise them of the situation before leaving the truck, but that none of those individuals answered her calls. Brewer first became aware of the incident after Kevin Parker happened to drive by the abandoned vehicle. Vincent's boyfriend, also a Brewer employee, had been driving behind the truck and was able to reach Ken Parker approximately an hour after the truck ran out of gas. As a result of this incident, another employee was temporarily assigned to lead Vincent's crew.

Second, Vincent was demoted from crew leader to laborer in January 2003 after gas leaks occurred on two consecutive days at sites that she was supervising. According to Fetters, who was present when one leak occurred, at least one of the leaks was caused by a laborer working under Vincent and was not her fault. Nonetheless, Cinergy revoked Vincent's gas certification, and Brewer consequently demoted her, as Vincent was unable to meet the requirement that a crew leader be certified by Cinergy. In February 2003, Ken Parker authorized Vincent to retake the Cinergy certification course. Though Vincent successfully completed the course and regained her certification, she was never promoted back to crew leader.

Finally, Vincent was disciplined for insubordination in June 2003 after refusing to clean a company truck. In response to Fetters' request that she do so, Vincent stated that she "didn't put the f[***]ing s[***] in the truck" and that "the little motherf[*****] that put it in it can clean it out himself." Vincent's refusal forced Brewer to pay another laborer extra salary to perform the task. Because of Vincent's behavior, Brewer determined that her prior demotion from temporary crew leader should be made permanent.

---

[1]Cinergy has since merged with the Duke Energy utility company.

[2]Though Brewer contends that the promotion was only temporary, Vincent alleges that, when advising her of the promotion, Brewer never described it as temporary.

In contrast with these instances of misconduct, there is evidence suggesting that Vincent was a capable laborer and crew leader. According to Fetters, Vincent typically performed "good work" for him, and her performance, at times, could be characterized as "excellent." Similarly, Everett Grooms, a former Brewer crew leader, testified that Vincent was a "good worker," and was "skilled and competent." More than one of Vincent's former coworkers stated that Vincent's crews were known to be more productive than those of most of her male counterparts.

Vincent was laid off at the decision of Ken Parker on July 25, 2003. The day before this, July 24, 2003, Brewer hired Mike Freels, a male laborer. Freels was assigned to the same blacktopping crew that Vincent was working on at the time that she was laid off. Freels was not certified in live gas and did not have any live gas experience, but he did hold certifications in plumbing and pipe fitting and have experience in concrete work. Vincent, in contrast, is not certified in plumbing.

The parties disagree as to whether any other employees were laid off at this time. Brewer claims that six employees, three men and three women, were laid off during the two weeks surrounding Vincent's layoff. Vincent, on the other hand, asserts that she was the only permanent employee laid off during this period. According to Vincent, the employees to which Brewer refers either asked to be laid off, were only temporary workers, or were terminated after her discharge and not at the decision of Ken Parker. On October 25, 2003, the Utility Division employed twelve more persons than it employed at the time of Vincent's final layoff.

Vincent did not return to work for Brewer after her July 2003 layoff. Vincent never contacted Brewer about the possibility of being called back to work. Brewer similarly did not contact her about being reinstated even though Grooms asked Ken Parker to call Vincent back to work on Grooms's crew. The parties contest the nature of Brewer's procedure for rehiring laid-off workers. Brewer asserts that its regular practice was to call an employee back only if the employee contacted it and expressed an interest in being recalled. Vincent, however, claims that it was Brewer's policy to contact a laid-off employee if it wanted her to come back to work, and that the employee was not expected to take any action. In their testimony, Vincent, two former Brewer employees, and one current Brewer employee, all of whom had been laid off at some point during their employment, contend that Brewer always initiated contact and that they never had to contact Brewer in order to be recalled.

During the time of Vincent's employment, all of her superiors and nearly all of her co-workers in the Utility Division were men. According to Vincent and several former Brewer employees, key members of Brewer's management team exhibited bias against female employees and frequently made degrading remarks about women. On one occasion, for example, Ken Parker allegedly told a female employee that "the problem with you is you're a f***ing woman." Another time, Kevin Parker purportedly stated that Dilillo disliked women even more than Ken Parker, and that Dilillo wanted to remove all of the Utility Division's female employees because they made it look bad.

Vincent brought suit against Brewer in the district court below, asserting three claims: a Title VII claim of discriminatory discharge, a Title VII claim of discriminatory demotion, and a claim of retaliatory discharge in violation of the public policy of Ohio. Brewer subsequently filed a motion for summary judgment on all claims.

In June 2006, the district court granted summary judgment in favor of Brewer on both Title VII claims and dismissed without prejudice Vincent's state law claim. The district court held that summary judgment was proper on Vincent's Title VII discriminatory discharge claim because Vincent had not established a prima facie case of gender discrimination. Relying on a sentence in this court's decision in *Suggs v. ServiceMaster Education Food Management*, 72 F.3d 1228 (6th Cir.

1996), the district court concluded that Vincent could not satisfy the fourth and final element of a prima facie case, which the court held to require that a plaintiff show "replace[ment] with a similarly qualified person." Because Vincent's alleged replacement, Freels, carried a plumbing certification and Vincent did not, the district court concluded that Vincent was not replaced by a party with similar qualifications. The district court also granted summary judgment for Brewer on Vincent's Title VII discriminatory demotion claim. The court concluded that Vincent's January 2003 demotion resulted from the action of Cinergy, not Brewer, as it was the loss of Vincent's live gas certification which necessitated her demotion. Finally, the district court dismissed without prejudice Vincent's remaining state law claim. Because the court granted summary judgment on Vincent's two federal claims, it declined to exercise supplemental jurisdiction over her state claim.

On appeal, Vincent challenges the district court's grant of summary judgment on her claim of discriminatory discharge.

## II.

Brewer was not entitled to summary judgment on Vincent's Title VII discriminatory discharge claim because a reasonable jury could conclude, based upon the evidence, that Vincent's layoff was the product of gender discrimination. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a case is at the summary judgment stage and a plaintiff seeks to prove discrimination via indirect, rather than direct, evidence, the plaintiff must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). Because Vincent has created genuine issues of material fact with respect to both of these inquiries, summary judgment was not warranted.

### A. Prima Facie Case

Vincent has presented evidence sufficient to make out a prima facie case of gender discrimination and thereby withstand summary judgment on this ground. To establish a prima facie case of gender discrimination, Vincent must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

Vincent has created a factual dispute with respect to all four elements of a prima facie case. First, as a woman, Vincent is a member of a protected class. *Valentine-Johnson v. Roche*, 386 F.3d 800, 814 (6th Cir. 2004).

Second, Vincent has created a genuine issue of material fact as to whether Brewer's decision to lay her off and never recall her constituted an adverse employment action. An employer's decision to discharge an employee is a classic example of an adverse employment action. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 n.2 (6th Cir. 2007). Although Brewer contends that Vincent chose not to return to work, and that there was thus no adverse employment action, the record contains sufficient contrary evidence to create a genuine issue of material fact. It is true that Vincent never contacted Brewer about the possibility of returning to work after her layoff, and that another worker, Freels, was recalled from a layoff after he repeatedly inquired about returning to work. Vincent, however, has presented evidence suggesting that laid-off Brewer employees were not expected to contact Brewer in order to be recalled. In their testimony, Vincent

and several former Brewer employees stated that Brewer would always contact a laid-off employee if it desired the employee to return to work, and that the employee did not need to take any action. Such testimony creates a factual dispute, which is all that is necessary at this stage of the litigation. Moreover, even if Vincent had chosen not to return, there is no question that Brewer made the initial decision to lay her off, and that itself is adequate to satisfy the requirement of an adverse employment decision.

Third, there are also disputed factual issues with respect to whether Vincent was qualified for her position. To establish this element, a plaintiff must show that her performance met her employer's legitimate expectations at the time of her discharge. *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 334 (6th Cir. 2006). There is considerable evidence suggesting that Vincent was a capable laborer and crew leader. According to Vincent's former coworkers, the crews that she supervised were more productive than most. One of Vincent's former superiors has similarly stated that she was "skilled and competent" and a "good worker." Consistent with these evaluations, another former superior specifically requested that Vincent be called back to work on his crew after her final layoff. While Vincent's performance may have been substandard on certain occasions, such as when she left a company truck on a roadside unsupervised or refused to clean a company vehicle after being directed to do so by a superior, she has offered enough evidence with respect to her qualifications to create a genuine issue of material fact.

Finally, Vincent has established the fourth element of a prima facie case because the employee who replaced her, Freels, is a man. Given that Brewer hired Freels the day before it laid Vincent off and assigned Freels to work on the same crew as Vincent, a reasonable jury could conclude that Freels was hired to serve as her replacement.

Vincent need not, as Brewer now contends, also show that Freels was similarly qualified. Such a requirement would inappropriately increase the showing that a plaintiff must make in order to establish a prima facie case. This court has repeatedly stated that the fourth element requires a plaintiff to show only that she "was replaced by a person outside the protected class." *See, e.g., Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007); *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004); *Peltier*, 388 F.3d at 987; *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 731 (6th Cir. 2000); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Nowhere does this oft repeated standard suggest that a plaintiff and her replacement must be similarly qualified.

In applying this standard to Title VII claims, this court has consistently held that a showing that a plaintiff's replacement was not a member of the plaintiff's protected class was sufficient to satisfy the fourth element. For instance, in *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995), a case involving racial discrimination, this court held that the plaintiff established the fourth element of his prima facie case by "showing that his position was filled by a white person." Because the plaintiff made such a showing, this court held that he was not required to establish that he was similarly situated to his former coworkers who were not terminated. *Id.* at 1247-48. Similarly, in *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007), an age discrimination case, this court held that a plaintiff "could satisfy the fourth element of her age discrimination claim . . . by providing evidence that she was replaced by a younger worker." *See also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 253 (6th Cir. 1998) (holding that a plaintiff failed to establish the fourth element because she did not provide evidence to support her claim that her former employer initially intended to replace her with a man).

Of course, when a plaintiff seeks to satisfy the fourth element by showing that she was treated differently from a worker outside of her protected class, rather than by showing that she was replaced by a non-class member, the standard makes explicit that the plaintiff must show situational similarity with respect to the more favorably treated employee. In *Talley*, 61 F.3d at 1247, for

example, we explained that the fourth element can be established by "showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were treated more favorably than the plaintiff" (emphasis in original).

The district court relied upon *Suggs* to hold that, where a plaintiff attempts to create an inference of discrimination based upon her replacement by a male worker, the plaintiff must show "replace[ment] with a similarly qualified person" in order to satisfy the fourth element. Because Vincent's male replacement is certified in plumbing and she is not, the district court concluded that Vincent could not establish the fourth element, and, consequently, a prima facie case.

*Suggs*, however, cannot be read to require similar situation in a replacement case. It is true that in *Suggs* we stated that "[t]o prevail on her individual disparate treatment claim of discriminatory discharge" a plaintiff must establish that:

> she belongs to a protected class; she was qualified for her position; she was discharged by the defendant; and after she was discharged, she was replaced with a similarly qualified person or her employer sought a similarly qualified replacement . . . who was not a member of her protected class; and her treatment differed from that accorded to otherwise similarly-situated individuals outside her protected group.

72 F.3d at 1232. This quoted language does not clearly refer to the prima facie case, and even if it did so, the language was not necessary to the actual holdings in *Suggs*. *Suggs* came before this court after a full trial was held, and this court "proceed[ed] directly to the ultimate question of whether the plaintiff carried her burden of proof of discriminatory discharge," and did "not revisit the *McDonnell Douglas* analysis of whether the plaintiff established a prima facie case of discrimination." *Id.* at 1232. Even if the quoted language could be read as a description of the elements of the prima facie case, it was in any event dictum.

Brewer points to no cases in which this court has actually held that the fourth element requires replacement with a similarly situated person. In the unpublished opinion *Moore v. In re Member Data Services*, No. 96-5855, 1997 WL 778405, at *1 (6th Cir. Dec. 9, 1997), this court quoted the relevant passage from *Suggs*, but that, too, was dictum with respect to the fourth element. Because this court determined that the plaintiff there had not established the third element of a prima facie case, qualification for his position, we did not address the fourth element.

Importing a "similarly situated" requirement into the "replacement with a person outside the protected class" method of establishing a prima facie case is therefore not warranted, and indeed inconsistent with the relevant Supreme Court and Sixth Circuit precedents.

### *B. Pretext*

Vincent has also created a genuine issue of material fact with respect to whether the legitimate, nondiscriminatory reasons articulated by Brewer for terminating her employment were a pretext for gender discrimination. *See McDonnell Douglas*, 411 U.S. at 804. Brewer has offered several permissible rationales for its decision to lay Vincent off. First, Brewer notes that six other employees, three men and three women, were laid off around the same time that Vincent was discharged, which suggests that Vincent may have been let go because of a lack of work within the company rather than because she was a woman. Brewer also contends that Vincent was laid off for violating company rules. As discussed, Vincent had been reprimanded prior to being terminated for leaving a company truck containing equipment unaccompanied and for insubordination after cursing at a superior and refusing to complete an assignment. Further, Brewer claims that it did not recall Vincent because she neglected to show any interest in being reinstated.

Based upon the evidence that Vincent has presented, however, a reasonable jury could conclude that Brewer's stated reasons for terminating Vincent were a pretext for unlawful discrimination. A plaintiff can establish pretext by demonstrating that the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge. *Tuttle*, 474 F.3d at 319.

Vincent has offered several pieces of evidence which are collectively sufficient to suggest pretext. Foremost, based upon derogatory statements purportedly made by Brewer's management team, a jury could reasonably conclude that Vincent's termination was motivated by her gender rather than by her work performance or by Brewer's decreasing need for laborers. Vincent and other former Brewer employees testified that members of Brewer's management team frequently made degrading comments regarding the capabilities of female employees, and expressed a desire to rid the Utility Division of their presence. Among the remarks alleged to have been made by Brewer management are the following:

> (1) Ken Parker stated that he believed that women do not belong at Brewer and that he would not hire them.

> (2) Kevin Parker told a crew leader, Ronald Ayres, that he did not permit his female laborers to do any work aside from directing traffic and that Ken Parker would fire Ayres if he discovered Ayres allowing female laborers to perform any other task.

> (3) Ken Parker told a female employee, Tina Updike, that the only jobs available to women at Brewer were those involving traffic direction.

> (4) Kevin Parker told Vincent and another female employee, Tammy Ayres, that Ken Parker instructed him to only permit female laborers to direct traffic.

> (5) Kevin Parker told Tammy Ayres that she could not be in charge of a project because women are "not leaders" at Brewer.

> (6) Ken Parker told Tammy Ayres that "the problem with you is you're a f***ing woman."

> (7) Kevin Parker stated that Dilillo disliked women even more than Ken Parker, and that Dilillo wanted to remove all of the Utility Division's female employees because they made it look bad.

> (8) Fetters frequently referred to Tammy Ayres using nicknames such as "sweetheart" and "cupcake," and often asked female employees graphic sexual questions.

> (9) Ken Parker told Updike that if she wanted to earn a man's pay then she would have to work like a man or she would be replaced by a man.

This court has held that discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group. *Id.* at 320; *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-57 (6th Cir. 1998).

The statements offered here are particularly probative. First, these comments were made by high-level officials who either had managerial authority over personnel decisions or otherwise played a meaningful role in such decisions. *Ercegovich*, 154 F.3d at 354-55. All of these alleged remarks can be attributed to either foremen or supervisors, and the majority of these comments were purportedly made by Ken Parker, who made the ultimate decision to lay Vincent off. Moreover, the

remarks made by Brewer management were neither isolated nor ambiguous, and thus are not "too abstract, in addition to being irrelevant and prejudicial, to support a finding of . . . discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993); *see also Ercegovich*, 154 F.3d at 356 ("we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence"). Not only were such alleged comments numerous, but a few, such as Ken Parker's remark that women "didn't belong" at Brewer and Dilillo's statement that he wished to rid the Utility Department of women, specifically convey a desire to terminate female employees.

Brewer contends that Vincent's experience as an employee refutes her claim of bias, and that these alleged comments should therefore be given little weight. Specifically, Brewer points out that Ken Parker himself approved Vincent's request to obtain live gas certification and chose to promote her to the position of crew leader. While such favorable treatment may weaken Vincent's claim, the question before this court is not whether Brewer's proffered legitimate, nondiscriminatory reason was in fact pretextual, but merely whether a factual dispute exists with respect to this question. Because the remarks offered by Vincent sufficiently suggest that Brewer terminated her employment because of her gender, a genuine issue of material fact exists.

The record also contains evidence suggesting that perhaps neither a lack of work nor Vincent's failure to express an interest in returning to work actually led Brewer to lay her off and subsequently not recall her. Approximately three months after Vincent was discharged, the Utility Division had increased from the 75 laborers employed when Vincent was laid off to 87 laborers. This increase in employment undercuts Brewer's argument that Vincent was let go because of its decreased need for laborers. Brewer's records do indicate that it laid off six other employees at approximately the same time that it terminated Vincent. According to the record, however, those individuals either were not permanent employees, were not terminated by Ken Parker, or themselves asked to be laid off. Thus, even if there was a shortage of work, that alone does not adequately explain why Vincent was the only permanent employee that Ken Parker dismissed and why she was not recalled once business picked back up. Furthermore, Vincent has proffered the testimony of several individuals that, as discussed, is inconsistent with Brewer's assertion that she was not recalled because she failed to express an interest in being reinstated.

Finally, a reasonable jury could conclude that Vincent was not laid off for violating company rules in light of the above pretextual evidence and additional evidence that she was a capable worker. As discussed with respect to Vincent's prima facie case, several of her former coworkers and superiors rated her performance as above average. Moreover, the lack of temporal proximity between Brewer's decision to lay Vincent off and her alleged instances of misconduct casts further doubt on this rationale. Vincent left a company vehicle unaccompanied in October 2002, lost her gas certification in January 2003, and was reprimanded for insubordination sometime in June 2003. Vincent was not laid off until July 25, 2003, however, which was at least five to six weeks after the last occurrence of her misbehavior.

### III.

For the foregoing reasons, the summary judgment is VACATED and the matter is REMANDED to the district court for further proceedings not inconsistent with this opinion.