NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0165n.06

Case No. 09-6084

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 22, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JESSICA A. LYONS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| METROPOLITAN  GOVERNMENT OF | ) | DISTRICT OF TENNESSEE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:     KETHLEDGE and WHITE, Circuit Judges; BECKWITH, District Judge.[*]

BECKWITH, Senior District Judge.  Plaintiff Jessica Lyons appeals the summary judgment

granted to Defendant in her Title VII and Section 1983 discrimination case.  Lyons alleged that her

employer, the Metropolitan Nashville Public School District ("MNPS"), discriminated and retaliated

against her when it refused to transfer her after her position was eliminated, and refused to hire her

for a different position with MNPS.  Lyons also alleged that MNPS retaliated against her after her

husband's complaints that MNPS failed to provide appropriate special education services to their

son.

**BACKGROUND**

---

[*] The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

No. 09-6084
*Lyons v. Metropolitan Government of*
*Nashville and Davidson County*

Jessica Lyons was employed by MNPS as the Director of Maplewood High School's Family Resource Center. Lyons assumed that position in 2001 and remained there until her employment was terminated effective June 30, 2007. In 2007, MNPS had five Family Resource Centers ("FRCs") within the district; two of them, Maplewood High School and Bordeaux Elementary School, were managed directly by MNPS. Funding for these centers, largely from the State of Tennessee and United Way, flowed directly to MNPS, which was responsible for staffing those centers. Three other FRCs in the district were managed by third-party agencies, with funds flowing directly to and staffing decisions made by those agencies.

In September 2005, Lyons' husband filed a complaint with the Office of Civil Rights of the Department of Education ("OCR"), alleging that MNPS had failed to accommodate their son's disability, violated his Section 504 Plan,[1] and retaliated against Lyons for her advocacy on his behalf. At the time, the Lyons' son was a senior at Maplewood High School. The OCR's June 14, 2006 written decision found that MNPS did not comply with certain regulations under Section 504 requiring "manifestation determination" meetings before the school could suspend a disabled student for more than ten days. MNPS agreed to a voluntary resolution of this issue. The OCR rejected Mr.

---

[1] Section 504 of the Rehabilitation Act provides that no person with a disability shall be subject to discrimination under any program or activity that receives federal financial assistance. The regulations implementing §504 provide standards for ensuring that students with disabilities receive appropriate educations. Lyons' son, who had Attention Deficit Hyperactivity Disorder, was suspended from school for more than ten days in a school year due to behavioral issues, in violation of OCR policy.

Lyons' complaints of retaliation, finding insufficient evidence to support a claim that MNPS retaliated against Lyons, her husband or their son. (RE 35, Exhibit 4)

In December 2006, Maplewood principal Darwin Mason told Lyons that management responsibility for the Maplewood FRC would be assumed by an outside agency, the PENCIL Foundation, at the end of the school year. It was not clear at that time whether Lyons' position with MNPS as Director would be eliminated when PENCIL took over. This information was clarified in a February 15, 2007 letter to Lyons from Jo Patterson, of the MNPS Human Resources department, which stated that the PENCIL Foundation would take over managing the Maplewood FRC as of July 1, 2007. Patterson's letter explained that Lyons' position was funded through a state grant which would terminate on June 30, 2007, and that after that date the director's position would be paid with United Way funds under PENCIL's control. As a result, Lyons' employment would end on June 30, 2007. Patterson urged Lyons to access the MNPS website to explore other employment opportunities with the district. (RE 35, Exhibit 7)

Reba Bryant, who at the time of these events was an MNPS Parent Outreach Specialist and responsible for managing the FRC grant funds, testified that she was contacted by Kim Mansfield, the coordinator of school counseling for MNPS, sometime in December 2006 or January 2007, and instructed to draft a contract for the PENCIL Foundation to manage the Maplewood FRC. Mansfield told Bryant that Dr. Sandy Johnson (MNPS Chief Operations Officer) and Dr. Pedro Garcia (Director of Schools) made the decision to transfer management to PENCIL. (RE 35, Exhibit 2, Bryant Deposition at 24-25) Bryant did not know why this change was requested, and she was not

aware of any problems with the Maplewood FRC. Bryant testified that two other FRCs (McKissack and Pearl-Cohn) were transferred from MNPS to a third-party agency (Vanderbilt) sometime prior to the Maplewood transfer, a decision also made by Drs. Johnson and Garcia. (*Id*. at 16-18) After the Maplewood transfer, only the Bordeaux FRC remained under MNPS management authority; its director was Kenneth Jones.

Connie Williams, PENCIL's executive director, stated in an affidavit that PENCIL served as fiscal agent for the Maplewood FRC prior to 2007, managing United Way funds provided for the Center. According to Williams, both MNPS and the United Way supported the decision to transfer management responsibility to PENCIL. In her discussions about the transfer with MNPS representatives, including Dr. Garcia, Lyons was not mentioned and there was no suggestion that the transfer was used as a vehicle for terminating Lyons' position. Lyons spoke with Williams in late 2006 about the possibility of remaining as the FRC Director with PENCIL, but told Williams that she did not want to leave MNPS due to the pay reduction that would result.[2] PENCIL hired Tasha Cartwright as the FRC director after PENCIL assumed management. (RE 27, Williams Affidavit)

On May 24, 2007, Lyons sent an email to Darilyn Mason at MNPS Human Resources, with copies to Jo Patterson and Tammy Carpenter, inquiring about her "displaced employee" status, and what rights and benefits she was entitled to. The district's displaced employee policy included in the MNPS Support Handbook addressed non-disciplinary demotion or reduction in force layoffs.

---

[2] Lyons testified that she never told anyone at PENCIL that she did not want to be considered for the job. (RE 24-1, Lyons Aff.)

(RE 35, Exhibit 12) The section in question generally provided that in the event of restructuring or reorganization, layoffs are conducted in order of seniority. Kenneth Jones, the director of the Bordeaux FRC, had less seniority than Lyons. Lyons wanted to remain an MNPS employee in a comparable job position, and inquired about her seniority rights for other FRC positions. (RE 35, Exhibit 13) MNPS took the position that Lyons was not considered a "displaced" employee within the meaning of the policy, and that Lyons was not entitled to union representation with respect to this issue because Lyons was in a managerial position.

A senior union representative, Benny Goolsby, wrote to June Keel, MNPS Human Resources Director, on June 28, 2007, objecting to MNPS' position concerning Lyons' right to union representation and filing a grievance on her behalf. (RE 35, Exhibit 17) Keel rejected the grievance as untimely, because it had not been filed within 40 working days of the February 15, 2007 termination letter as required by contract. An independent reviewer later concluded that Lyons was covered by the MOU between MNPS and the union and was entitled to union representation. But the reviewer agreed that Lyons' grievance was untimely, as she was on notice no later than February 15, 2007 that her position was being eliminated and that the district did not consider her to be a "displaced" employee eligible for transfer. (RE 24, Exhibit 4)

While her grievance was pending, Lyons applied for other positions with MNPS. Lyons claims that MNPS Human Resources placed her on an initial list of "eligible for hire" candidates. Roderick Manual, principal at Hillsboro High School, interviewed Lyons on or around July 4, 2007 for a guidance counselor position at that school. Manuel then recommended to Gene Foster, at

MNPS Human Resources, that Lyons be hired to fill that position. (RE 35, Exhibit 23, Manuel Deposition at 15) A few days later, Foster told Manuel that he could not hire Lyons; Manuel did not remember if Foster gave him a reason for this. Keel testified that when Foster approached her about hiring Lyons, she told Foster that Lyons was not eligible and could not be hired. Keel testified that her decision about Lyons was based upon comments she heard from Goolsby about Lyons. Keel said that she "knew, based on conversations I'd had with Benny Goolsby, that Ms. Lyons was being threatening in her behavior and was making questionable statements about the school system and its employees. When I say 'questionable,' I meant threatening or unfounded accusations." Keel stated that Goolsby described Lyons' behavior as "erratic and she didn't appear to be stable." (RE 24, Exhibit 2, Keel Deposition at 39) Keel could not recall any other specifics about her conversations with Goolsby about Lyons.

Lyons interviewed for another guidance counselor position at Stratford High School on July 24, 2007. Later that same day, MNPS received a police report indicating that a psychiatrist had contacted the Nashville police because a patient made threats against Maplewood High School and then walked out of a local treatment center. (RE 24, Exhibit 5, MNPS "Info-Gram" incident report) As a result, the school was placed on lockdown. When Keel heard about the incident, she suspected the threats had been made by Lyons, based on her earlier conversations with Goolsby. When she confirmed that this was true, Keel instructed Foster to place Lyons on the district's no-hire list. (RE 35, Exhibit 24) Lyons remains on no-hire status with MNPS.

Lyons does not deny that she told a therapist on July 24, 2007 that she "felt like blowing up the school." She contends that she was surprised when the therapist asked her if she was serious, and that she then asked to see another doctor. After waiting a few minutes in the waiting room for the other doctor to appear, she left the clinic thinking that she was free to do so. When she learned from her husband that the police had come to her home, she returned to the hospital. She was then held involuntarily for the minimum 72-hour period required by state law. Lyons testified that her doctor concluded that the incident had been exaggerated, and he did not believe that Lyons was a threat. (RE 34, Plaintiff's Response to Defendant's Statement of Undisputed Facts, ¶¶5-6; RE 35, Exhibit 1, Lyons Deposition at 128-135)

Lyons filed two charges with the EEOC. The first was dated July 5, 2007, and alleged that MNPS discriminated against Lyons based on her sex when it refused to transfer her to the Bordeaux FRC, and retained Kenneth Jones. Her second charge, dated July 30, 2007, alleged that MNPS retaliated against her for filing her first charge by refusing to hire her for the guidance counselor positions at Hillsboro and Stratford High Schools. She also alleged that MNPS discriminated on the basis of disability, as she required "medical attention" as a result of her termination in June. (RE 24, Exhibit 7)

Lyons filed her complaint against MNPS on August 21, 2008, alleging that MNPS wrongfully terminated her based on her sex, in violation of Title VII (Count I); retaliated against her for filing her first EEOC claim, in violation of Title VII (Count II); and retaliated against her for her complaints about her son's education services, in violation of 42 U.S.C. §1983 (Count III). The

district court granted summary judgment to MNPS on all of Lyons' claims. The court found that Lyons had not established a prima facie case of sex discrimination. Lyons did not attribute the elimination of her position as director of the Maplewood FRC to gender discrimination, as she consistently asserted that MNPS eliminated her position in retaliation for her complaints about her son's education. Lyons' discrimination claim was premised on the decision to terminate her and not Kenneth Jones, violating the displaced employee policy. The district court concluded that to satisfy the fourth prong of her prima facie case, Lyons must show that other non-protected, similarly-situated employees were treated more favorably in applying the displaced employee policy; Lyons was the only employee whose position was eliminated. Jones' position was not affected and therefore he was not similarly situated to Lyons with respect to the policy. Moreover, Lyons' argument that "every other MNPS employee" received the benefit of that policy was not supported by any admissible evidence, and was insufficient to establish Lyons' prima facie case.

As to her retaliation claim, the district court relied on Lyons' express testimony that her claim was based on the OCR complaint about her son to conclude that Lyons failed to establish a prima facie Title VII claim. But even if Lyons had established a causal connection between her EEOC complaint and the failure to hire her, the court found MNPS offered a legitimate justification. Keel disapproved Lyons for the Hillsboro position because Keel learned from Goolsby that Lyons acted erratically and might be unstable. And Lyons was not hired for the Stratford position and was placed on no-hire status after the July 24th incident. The district court found that Lyons had not produced any evidence suggesting these reasons were a pretext for discrimination.

The district court also found that Lyons' Section 1983 claim was time-barred by the applicable one-year statute of limitations, which began to run no later than February 15, 2007, the date of Lyons' written termination letter. The court rejected Lyons' arguments that all of MNPS' actions with respect to Lyons' employment constituted a continuing violation. Lyons' equitable tolling argument was also rejected, as she failed to demonstrate any extraordinary circumstances that might justify tolling the statute.

Lyons timely appealed the judgment in favor of MNPS.

**STANDARD OF REVIEW**

This Court reviews de novo a district court's order granting summary judgment. *Sullivan v. Oregon Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). In reviewing the district court's decision to grant summary judgment, we must view all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**1.      Gender Discrimination**

To establish a prima facie case of unlawful gender discrimination, Lyons must show: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class,

or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)). The parties do not dispute the first three elements.

Lyons does not claim that she was terminated from her FRC position because of her gender. She repeatedly testified that she believed her termination was due to her prior advocacy for her son. Lyons' claim is premised on MNPS' failure to transfer her to the Bordeaux FRC directorship based on her seniority over Kenneth Jones. Lyons contends that the district court erred in finding that Jones was not similarly situated to Lyons. She argues that the correct question is whether MNPS discriminated against Lyons when it terminated her rather than Jones, once MNPS decided to eliminate one of the district's FRC Director positions.

The district court correctly found that the critical question in determining whether Lyons and Jones were similarly situated is whether MNPS applied the displaced employee policy in a non-discriminatory fashion. That policy is the only basis upon which Lyons could claim that she was entitled to displace Jones from his job. The district court correctly concluded that Lyons failed to show that she was treated differently from any other similarly-situated employee under that policy. Lyons argues that she is the "only" MNPS employee who was not considered "displaced" after her position was terminated. But she relies only on her own subjective belief and the testimony of Tammy Carpenter to support this argument. Carpenter, an MNPS registrar who had worked with some displaced employees from 2003 to 2007, testified that her work was limited to "clerical, school-based employees, Title I tutors, ed assistance, ISS monitors, and campus security." (RE 35,

Exhibit 9, Carpenter Deposition at p. 22) None of these positions are comparable to that of an FRC Director. Lyons does not identify any similarly-situated employee who was treated more favorably.

We therefore affirm the district court's determination that Lyons failed to establish a prima facie case of gender discrimination.

**2.      Title VII Retaliation**

A prima facie claim of retaliation requires Lyons to establish that: "(1) she engaged in Title VII-protected activity; (2) [MNPS] knew that she engaged in the protected activity; (3) [MNPS] subsequently took an adverse employment action against [her]; and (4) the adverse action was causally related to the protected activity." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citations omitted). The parties dispute only the fourth element—whether Lyons established a causal connection between her internal MNPS grievance and her EEOC claims, and the failure to hire her for either of the guidance counselor positions. To establish a causal connection, Lyons must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal citations and quotation marks omitted).

The district court relied on Lyons' testimony that the alleged retaliation was based on her advocacy for her son to find a lack of a causal connection. That advocacy is not protected by Title VII. Even assuming that Lyons established a prima facie Title VII case, however, the district court found that MNPS articulated a legitimate, non-discriminatory reason for its action. Keel testified that Lyons was not hired for the Hillsboro position based on Goolsby's comments about her erratic

behavior. And she was not hired for the Stratford position, and placed on ineligible status, because of her July 24 threats. The district court concluded that Lyons had no evidence suggesting these reasons were a pretext for retaliation.

While Lyons consistently asserted that the OCR claim about her son was a major reason for MNPS' actions, Lyons also testified that she believed Keel retaliated against her for filing the July 5 EEOC charge. (Lyons Deposition at 186) Based on that testimony, and the close temporal proximity between the July 5 charge and the refusal to hire her as a guidance counselor, we assume that Lyons could state a prima facie claim of retaliation. We agree with the district court that MNPS has articulated a legitimate non-discriminatory reasons for its actions, satisfying its burden of production on that issue.

Lyons can demonstrate pretext by showing that (1) the proffered reason has no factual basis; (2) the reason did not actually motivate the decision; or (3) the articulated reason is insufficient to justify the adverse action taken. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Lyons challenges Keel's testimony, arguing that Keel could not remember the specific conversations she had with Goolsby, and that Keel did not document Goolsby's concerns. She contends that Goolsby "advocated" for Lyons throughout her union grievance, suggesting that he would not do so if he believed her to be "unstable." Lyons also notes that as late as June 25, 2007,

Keel had invited Lyons to apply for other positions with MNPS. Lyons contends that the district court failed to consider this evidence in the light most favorable to her. We disagree.

With regard to the Hillsboro position, Lyons simply attacks Keel's credibility concerning her testimony about Goolsby as the basis for her decision. It is not sufficient for Lyons to question Keel's credibility to raise an inference that Keel's explanation has no factual basis or did not actually motivate the decision. "[A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence." *Cox v. Kentucky DOT*, 53 F.3d 146, 150 (6th Cir. 1995) (citations omitted). Even if Keel was mistaken in her impressions of Goolsby's comments about Lyons, that would not establish the implausibility of her explanation. See, e.g., *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001), noting that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for [an employment action], the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." (citation omitted) Lyons has not come forward with any evidence that Goolsby did not make any negative comments, or that Keel's decision lacks any factual basis. She has no facts suggesting that Keel's decision was riddled with error or was so flawed that MNPS could not have honestly relied on it in refusing to hire Lyons. *See In Re Lewis*, 848 F.2d 624, 633 (6th Cir. 1988). Nor has she come forward with any evidence that Keel's explanation did not actually motivate her decision.

With respect to the July 24 incident, Lyons does not dispute that she told her therapist that she felt like "blowing up" the school. She admits that her therapist was sufficiently alarmed by her

conduct that day that the police were called, and that she was involuntarily hospitalized for three days following the incident. While she claims that the incident was overblown or exaggerated, she has no evidence to suggest that the incident was not the true reason she was not hired at Stratford, and then placed on the no-hire list. Nor does she suggest why such conduct would be an insufficient basis for those actions.

We therefore conclude that the district court correctly granted summary judgment to MNPS on Lyons' retaliation claim.

**3.      Section 1983 Claim.**

The statute of limitations for an action alleging a violation of civil rights under 42 U.S.C. §1983 is the applicable state limitations period governing personal injury claims. Tennessee's limitations period, Tenn. Code Ann. § 28-3-104(a)(1), is one year. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). The district court found that the one-year statute began to run no later than February 15, 2007, when Lyons was officially notified that her position would be eliminated. Lyons' complaint was filed on August 21, 2008, and was untimely. The district court cited *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980), which held that "[the] proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." (internal quotation marks omitted) (alteration in original).

Lyons argues here, as she did below, that the statute did not begin to run until October 2007 at the earliest, when her internal grievance was resolved. This argument is foreclosed by *Ricks*, which specifically held that "the pendency of a grievance, or some other method of collateral review

of an employment decision, does not toll the running of the limitations periods." 449 U.S. at 261.

Lyons also argues that all of MNPS' actions should be treated as a continuing violation. This Court has recognized two narrow situations falling under the continuing violation theory: an ongoing series of discriminatory acts related to a discriminatory decision (such as disparate work assignments), or a long-standing policy of discrimination. *See Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003). There is no evidence of the latter in this case. Lyons argues that each of the actions taken against her - the elimination of her position, the failure to treat her as a displaced employee, the failure to hire her as a guidance counselor, and her placement on the ineligibility list - are continuing violations. The district court properly rejected this argument. Each of these incidents was a discrete act with discrete consequences. As the district court noted, "just because discrete claims are related to one another - in terms of the parties involved, the nature of the underlying conflict and the theory of relief - does not mean that the limitations period is suspended for all of the claims so long as just one of them occurred within the limitations period." (RE 44, Memorandum Opinion at 17) (quoting *Baar v. Jefferson Cnty. Bd. Of Educ.*, 311 Fed. Appx. 817, 824 (6th Cir. 2009)). The fact that these actions may have had a continuing impact is not a sufficient basis upon which to apply the continuing violation doctrine.

In *Sharpe v. Cureton*, we held that the doctrine did not apply to Section 1983 claims of firefighters who argued that defendants' actions against them, including involuntary transfers, subsequent involuntary schedule changes, and the denial of merit pay increases, were continuing violations. The first incidents, the involuntary transfers, occurred in September 1995, and plaintiffs

promptly filed grievances asserting that the transfers were in retaliation for their support of a losing mayoral candidate. The claims based on the transfers were untimely, because plaintiffs had filed their complaint more than one year after the transfer notices had been issued. Like the series of acts at issue in *Sharpe v. Cureton*, the acts of which Lyons complains were separate and discrete. All of these acts occurred outside the one-year limitations period.

Lyons also argues that the statute of limitations should be equitably tolled. A district court's rejection of equitable tolling is reviewed for abuse of discretion. *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). Equitable tolling may be appropriate if Lyons establishes that she diligently pursued her rights, and some extraordinary event beyond her control prevented her from timely filing her claims. *Truitt* identified five factors applicable to this determination: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt*, 148 F.3d at 648 (citation omitted).

Lyons contends that she lacked knowledge about her filing requirements until after the EEOC issued her a right to sue letter and she retained counsel in August 2008. Lyons' Section 1983 claim is not related to her allegations of sex discrimination, and the EEOC had no obligation to investigate a claim of retaliation for Lyons' advocacy on behalf of her son. Lyons knew as early as December 2006 that her position was going to be eliminated, but she admits she took no steps to inquire about filing a claim until August 2008. Lyons also argues that she diligently pursued her rights by pursuing

her union grievance and filing her EEOC charges. The union grievance was limited to the dispute about the displaced employee policy, and had nothing to do with a retaliation claim. Her union representative, like the EEOC, had no duty to advise Lyons about unrelated claims she may have had.

Lyons also argues that MNPS would not be prejudiced by her untimely filing. The district court did not specifically address this issue, concluding that Lyons did not establish that she diligently and reasonably pursued her rights, and that no one prevented her from timely filing a claim. MNPS persuasively argues that a lack of prejudice is not an independent basis upon which equitable tolling may be based given Lyons' own failure to diligently pursue her rights, citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) (per curiam). We agree.

We conclude that the district court's rejection of Lyons' equitable tolling argument was not an abuse of discretion, and affirm the judgment on Lyons' Section 1983 claim.

## CONCLUSION

The district court's summary judgment in favor of MNPS is affirmed.

No. 09-6084
*Lyons v. Metropolitan Government of*
*Nashville and Davidson County*

**HELENE N. WHITE, Circuit Judge** (concurring in part and dissenting in part). I agree with my colleagues that Lyons's § 1983 claim is time-barred and that the district court properly dismissed it on that basis. I also concur in the conclusion that Lyons failed to establish a prima facie case of sex discrimination. In addition to the majority's discussion of the issue, I note that there is no evidence that the displaced-employee policy was applied in a discriminatory manner based on sex: Tammy Carpenter stated in an affidavit that in her 30 years of experience in the MNPS human-resources department, she was not aware of the policy ever being applied disparately depending on employees' gender, and that the policy has resulted in transferring more-senior employees into jobs held by less-senior employees irrespective of gender. Although Lyons seems to argue that the policy was applied in Jones's favor rather than hers, there is no support for the proposition that the policy was applied at all to the grant-funded Family Resource Center director positions.

I also agree with the majority opinion that Lyons states a prima facie claim of retaliation. The close temporal proximity between the filing of her July 5, 2007 EEOC charge and the decision not to hire her for the Hillsboro High School guidance-counselor position, coupled with the Hillsboro Principal's initial enthusiasm about hiring Lyons for the position, are enough to show a causal connection. I would further hold, however, that Lyons has raised a genuine issue of material fact as to whether MNPS's proffered reason for not hiring her for this position was pretextual and I would remand.

Keel asserted that her decision to direct that Lyons not be hired was motivated by her earlier conversation with Lyons's union representative, Benny Goolsby, in which Goolsby allegedly stated

that "Lyons was being threatening in her behavior" and that her behavior "was erratic and she didn't appear stable." On its face, this is a legitimate, nondiscriminatory reason for the adverse employment action of not re-hiring Lyons for the Hillsboro position. To survive MNPS's motion for summary judgment, Lyons must show "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). The majority concludes that Lyons's attempt to cast doubt on the credibility of Keel's testimony about Goolsby's statements is insufficient to undermine the proffered reason for the decision not to hire. But Lyons's argument consists of more than mere assertions that Keel lacks credibility. On June 25, 2007, Keel emailed Lyons, asking: "Have you completed an online application for a guidance counselor position? If not, I suggest you do so immediately, if you wish to be considered for this position." According to Keel, she sent this email *after* her conversation with Goolsby, raising the question why her conversation with Goolsby was not worrisome enough to dissuade her from encouraging Lyons to apply for the guidance counselor position in the first instance, but later provided a reason for declining to hire Lyons for the same position. When asked at her deposition why she did not inform Lyons that she would not be hired or tell Lyons not to apply in the June 25 email, Keel merely stated: "I don't know, and looking back, I probably should have."

Lyons has thus raised a genuine issue of material fact whether Keel's proffered reason actually motivated the decision not to hire. This is bolstered by the timeline of events: Lyons filed her first EEOC charge after the July 25 email (and after interviewing for the Hillsboro job) but before

Keel decided not to hire her. A jury should decide whether Keel's decision not to hire Lyons was motivated by concerns about Lyons's "erratic" behavior or, conversely, was in retaliation for the protected activity of filing an EEOC charge.[1]

Regarding MNPS's failure to hire Lyons for the Stratford High School guidance counselor position, I agree with the majority that Lyons fails to rebut MNPS's proffered reason for its decision. Overblown and misconstrued as Lyons's July 24, 2007 statement to her therapist may have been, it provides an adequate basis for MNPS's decision not to hire. In my view, then, the July 24 incident would be relevant to the issue of damages.

I respectfully dissent, and would reverse the grant of summary judgment to MNPS and remand for further proceedings.

---

[1]No testimony from Goolsby appears in the record.